IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARTIN PATINO,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

    Defendant.
_____/

No. CIV S-05-1736 DAD

ORDER

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is reversed and this case is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

On March 5, 2003, plaintiff Martin Patino applied for Social Security Disability Insurance benefits under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act). (Transcript (Tr.) at 50-53, 57-66, 253-55.) The

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

Commissioner denied plaintiff's applications initially and on reconsideration. (Tr. at 37-46, 251-52.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on June 7, 2004, at which time plaintiff was represented by counsel. (Tr. at 47, 324-44.) In a decision issued on October 20, 2004, the ALJ determined that plaintiff was not disabled. (Tr. at 18-28.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's status post L4-5 discectomy and L4-5 and L5-S1 foraminotomies in July 1999 and laminectomy in October 2001 with residual *cauda equina* syndrome and depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the residual functional capacity to perform sedentary work on a sustained basis. In particular, the claimant can lift and carry ten pounds. He can stand and walk for two hours in an eight-hour day but should avoid walking on uneven ground. The claimant can sit for at least six hours in an eight-hour day and can occasionally climb, balance, kneel, crouch, stoop and crawl. The claimant should also avoid working around hazards and must be within 150 feet of a bathroom facility. Due to his mental impairments, the undersigned concludes the claimant can perform simple, unskilled work that does not involve much contact with the public.

/////

7.  The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964)

10. The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

11. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.28, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. at 20-21.)

Plaintiff requested review of the ALJ's decision, but the Appeals Council declined review on May 20, 2005.  (Tr. at 9-12, 15.)  Plaintiff's request for an extension of time to seek review in court was granted on July 22, 2005.  (Tr. at 5-8.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 26, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.

/////

> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances two arguments in his motion for summary judgment and/or remand.  First, plaintiff asserts that the ALJ's findings on lack of credibility were insufficient to justify the rejection of plaintiff's statements regarding the severity of his symptoms.  Second, plaintiff contends that the ALJ's use of the grids failed to sustain the Commissioner's burden of proving non-disability at step five of the sequential evaluation.  For the reasons set forth below, the court finds both arguments persuasive.

It is, of course, well established that the determination of credibility is a function of the ALJ, acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Thus, questions of credibility and resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

It is also well established that, in evaluating a claimant's subjective testimony regarding pain and the severity of the claimant's symptoms, an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285.

1  Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take
2  into account prior inconsistent statements or a lack of candor by the witness.  See Fair v. Bowen,
3  885 F.2d 597, 604 n.5 (9th Cir. 1989).
4        Nonetheless, an ALJ's decision to reject a claimant's subjective testimony
5  regarding the severity of his symptoms must be supported by specific findings.  Morgan, 169
6  F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770
7  F.2d 845, 848 (9th Cir. 1985)).  "Without affirmative evidence showing that the claimant is
8  malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear
9  and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.
10  1999).
11        Once a claimant has presented medical evidence of an underlying impairment, the
12  ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because
13  the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715,
14  722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  Rather, "'the
15  ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering
16  specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting Smolen,
17  80 F.3d at 1281).  See also Reddick, 157 F.3d at 722.  Although the ALJ may rely, in part, on his
18  or her own observations, see Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot
19  substitute such observations for medical diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6
20  (9th Cir. 1990).
21        Here, plaintiff's medical records document conditions which might reasonably be
22  expected to cause symptoms of low back pain, bladder dysfunction, and limitations on the ability
23  to walk, sit, and perform other basic work functions.  Consistent with those records, the ALJ
24  properly determined at step two of the sequential evaluation process that plaintiff has medically
25  determinable impairments that are severe based on plaintiff's "status post L4-5 discectomy and
26  L4-5 and L5-S1 foraminotomies in July 1999 and laminectomy in October 2001 with residual

*cauda equina* syndrome[2] and depression, which significantly affects his ability to perform basic work activities." (Tr. at 22, 27.)

As noted above, at step four of the sequential evaluation process, the ALJ found that

> the claimant can lift and carry ten pounds. He can stand and walk for two hours in an eight-hour day but should avoid walking on uneven ground. The claimant can sit for at least six hours in an eight-hour day and can occasionally climb, balance, kneel, crouch, stoop and crawl. The claimant should also avoid working around hazards and must be within 150 feet of a bathroom facility. Due to his mental impairments, the undersigned concludes the claimant can perform simple, unskilled work that does not involve much contact with the public.

(Tr. at 22-23.) On the basis of these findings, the ALJ properly determined that plaintiff could not perform his past work as a cashier or backstage worker for a casino showroom, or his past work in retail sales, collections, and food service. (Tr. at 22-23, 27.)

Turning to the question of whether plaintiff could perform other work, the ALJ considered plaintiff's testimony and concluded that he

> could not find the claimant credible for the following reasons. First, the record contains inconsistencies that question the claimant's credibility. The claimant reported in March 2003 that he could engage in his own grooming and bathing. He further indicated he cooked and shopped with his mother. The claimant also related he could walk 40-50 minutes. (Exhibit 3E) However, at the hearing the claimant testified he could walk for only one

---

[2] "*Cauda equina*" is defined as "[t]he bundle of spinal nerve roots running through the lower part of the subarachnoid space within the vertebral canal below the first lumbar vertebra." Stedman's Medical Dictionary 134 (1995). "*Cauda equina* syndrome" is an impairment of the nerves in the *cauda equina*, which is the bundle of spinal nerve roots that extrude from the lower end of the spinal cord." Dollard v. Allen, 260 F. Supp. 2d 1127, 1130 n.2 (D. Wyo. 2003) (citing 4 Roscoe N. Gray, M.D., & Louise J. Gordy, M.D., Attorneys' Textbook of Medicine §§ 12.33, 12.92 (3d ed. & Supp. 2002)). Symptoms of the syndrome include bilateral sciatica; bowel and bladder dysfunction; loss of sensation in the buttocks, genitalia, and thigh area; and a decrease in rectal sphincter tone. 260 F. Supp. 2d at 1130 (citing 13 Attorneys' Textbook of Medicine § 176.32). The syndrome is considered extremely rare and has been described as "the only true low back pain emergency." Id. at 1130 (citing 13 Attorneys' Textbook of Medicine § 176.32) & 1130 n.2 (citing 4 Attorneys' Textbook of Medicine § 12.92). The syndrome has also been observed to be a "rapidly evolving neurologic disorder." Jimerson v. United States, No. 99-CV-0954E (SR), 2003 WL 251950, at *2 (W.D.N.Y. Jan. 13, 2003).

> mile and performed no cooking.  In addition, while the claimant testified he received no relief from pain medications, he previously reported to his physicians that his medications were adequately relieving his pain.  (Exhibit 3F, p. 3 and 1F, p. 17)  The undersigned also notes that despite his testimony he can only sit for short periods, the claimant is taking college level courses which require prolonged sitting.  Moreover, the claimant's allegations of total disability based on his physical complaints are inconsistent with an ability to attend college level courses.  Based on this evidence, the claimant's self-reported inability to function is out of proportion to his demonstrated capacity.  Accordingly, the undersigned finds the claimant retains the residual functional capacity to perform sedentary work.

(Tr. at 26.)

The court finds that the ALJ's decision not to credit plaintiff's allegations and testimony regarding the severity of his symptoms and the limitations they place upon him rests on (1) perceived inconsistencies that are not supported by the record and (2) plain error with regard to plaintiff's alleged full-time attendance of college-level courses.

First, with regard to the alleged inconsistencies, the ALJ compared plaintiff's responses to an Exertional Daily Activities Questionnaire completed in March 2003 (Exhibit 3E, tr. at 70-72) with plaintiff's testimony at the administrative hearing held in June 2004, more than fourteen months later (tr. at 324-44).  Aside from the difference in time, which in itself could explain any variations, the ALJ has not fairly characterized either plaintiff's statements in the questionnaire or his testimony at the administrative hearing.

In 2003, plaintiff did not make an unqualified statement that he could "engage in his own grooming and bathing," as reported by the ALJ.  Plaintiff actually stated, "I can do most of my own grooming/dressing, bathing & cooking" and added that "[i]t takes me about 4 X as long to accomplish these tasks then [sic] it did before."  (Tr. at 70.)  Similarly, plaintiff's statement in 2003 about shopping with his mother was actually as follows:  "Every two weeks I go to store w/ my Mom.  She buys her own groceries then too.  She pushes the cart & unloads the groceries so I don't have to."  (Tr. at 71.)  At the hearing in 2004, plaintiff testified that he does not wash dishes, cook, or do laundry or housework because he is not supposed to do housework

8

and because bending and leaning are uncomfortable. (Tr. at 335, 341.) Plaintiff testified further that his mother does the housework and cooking, he makes his bed only in the sense that he pulls the comforter over the top of the bed, and he has difficulty dressing in regard to anything below the waist. (Tr. at 341-42.) The court finds no inconsistencies that call into question plaintiff's credibility.

With regard to plaintiff's ability to walk, plaintiff did not make an unqualified statement in 2003 that he "could walk 40-50 minutes." The question on the form asked how far and how long he could walk and how he felt after walking this distance. (Tr. at 70.) Plaintiff responded: "<u>Up to a mile</u> at one time. About 40-50 mins. Winded, tired, fatigued, numb, agreegious [sic] pain." (<u>Id.</u> (emphasis added).) In 2004, plaintiff testified that he can walk for "<u>[m]aybe a mile</u> with little discomfort" and that he walks to school, which is about a five-minute walk from his home, but it takes him 20 to 30 minutes to complete the walk. (Tr. at 330-32 (emphasis added).) Again, the court finds no inconsistencies between plaintiff's responses and his later testimony that cast doubt on plaintiff's credibility.

With regard to pain medication, the ALJ cited two documents in which plaintiff "previously reported to his physicians that his medications were adequately relieving his pain" and contrasted those documents with plaintiff's testimony in 2004 that he "received no relief from pain medications." (Tr. at 26.) Again, the ALJ has not fairly characterized either plaintiff's testimony or the documents cited. Exhibit 3F contains medical records from Barton Memorial Hospital, and page 3 is a physical therapy record containing a check mark indicating "Pain decreased 3/10." (Tr. at 204.) Whether this represents plaintiff's assessment or the therapist's is unclear, but in any event it is clear that the assessment relates to the physical therapy treatment rather than to pain medication. Exhibit 1F contains medical records from St. Mary's Medical Center and Catholic Healthcare West in San Francisco, and page 17 is a progress record dated April 16, 2002, noting low back pain at 5-6 on a scale of 10 and further noting that this level is acceptable. (Tr. at 135.) It is not entirely clear whether the indication of acceptability was

plaintiff's or that of medical staff, but in either event there is no information about what pain medication plaintiff was taking or the dosage in 2002.  In 2004, more than two years later, plaintiff testified that he takes several pain medications but is always in pain, even when on the pain medication, although the pain is reduced by the medication.  (Tr. at 329.)  Plaintiff also testified, "I have pain that's significant all day long even when on medication as often as I can take it.  The medication probably makes it somewhat more tolerable than it normally is."  (Tr. at 338.)  Aside from the futility of comparing pain levels two years apart and out of context, the court finds that plaintiff consistently reported that he was not pain-free.  A comparison of plaintiff's testimony and the documents cited by the ALJ reveals no inconsistency that discredits plaintiff's testimony.

   Accordingly, the court finds that the inconsistencies perceived by the ALJ do not provide a clear and convincing reason to reject plaintiff's subjective testimony about his symptoms and their severity.

   The court turns next to the ALJ's error with regard to plaintiff's attendance of college-level courses.  In summarizing the medical evidence, the ALJ stated that plaintiff "informed the consultative psychiatric examiner that he was taking community college classes on a full-time basis."  (Tr. at 24 (citing Ex. 4F, p. 3).)  In fact, Dr. Shively's psychological report dated April 25, 2003, reflects that plaintiff "is currently taking <u>a class</u> at the local community college."  (Tr. at 214 (emphasis added).)  Dr. Shively went on to observe that plaintiff's "ability to withstand the stress of a routine workday and adapting to change appears to vary according to his physical disability" and further noted that plaintiff "has had to quit jobs due to the physical complications associated with his disability."[3]  (Tr. at 214.)

   The ALJ's erroneous finding of full-time college attendance served as one ground for rejecting the opinion of Dr. Jason Jones, who assessed plaintiff as unable to engage in work

---

[3] The ALJ also erroneously found that Dr. Shively "reported the claimant was capable of . . . withstanding the stress of a routine workday."  (Tr. at 25.)

10

activities at all because pain would completely undermine plaintiff's ability to sustain a work routine by placing extreme limitations on his concentration, persistence and pace:

> [T]he assessment by Dr. Jones appears contrary to the claimant's own reports of his abilities in that the claimant testified he is attending community college courses on a full-time basis despite his impairments. Clearly, if the claimant had extreme difficulties with concentration, persistence and pace caused by disabling pain levels reported by Dr. Jones, the claimant could not sustain college courses.

(Tr. at 25.) At the hearing in 2004, plaintiff did not testify that he was attending community college courses full-time. Rather, he testified as follows:

> I'm currently taking classes at the college.
> . . . .
> I've been going to this college for a year. I've been taking breaks during my, I've been going to school on and off for the last, since my first surgery, the second surgery rather. . . . And I've been going to school about four years on and off and I don't even have a two-year degree yet so – . . . . not, like, full-time. . . . I think I have 12 [credits] this quarter. . . . I scheduled the classes this quarter so I'm only taking one class each day of the week and I'm off Friday, Saturday and Sunday.
> . . . .
> – have three different classes . . . . Two times [a week] for each class except one of them is only one time. Tuesday is the only day that I have more than one, actually, I have two classes on Tuesday that, I just thought of that. There's a significant break in between the two of them and the second is a history of film class. So all we do is watch movies. I don't really have to think.
> . . . .
> While I'm at school, . . . all of my classes that I've made special arrangements to get, I have a special chair that I have in all my classes.[4] I've made arrangements with the teachers so they know I have a problem and that I might have to get up and walk around. Maybe walk out of the class and come back and they're okay with that because I've let them know but I'm prone to missing lecture. I've missed some school because of my issues with it. That's why I've been going to school for four years and have not even a two-year degree yet.
> . . . .
> I've taken incompletes. Actually, in my last quarter I had to take incompletes because I missed a significant amount of work from my back pain and numbness and that, everything associated with

---

[4] Plaintiff testified that he is associated with the Disabled Students' Association, which is where he obtains special accommodations, such as special chairs. (Tr. at 340.)

11

> my injury too – . . . where I loss [sic] significant lecture time and course work that I needed to take an incomplete and I need to finish that within the next year or – . . . – they change into an F.

(Tr. at 327, 331, 334, 339, 341.)

The ALJ also cited full-time college attendance as a reason to discount plaintiff's allegations concerning depression:

> [T]he claimant indicated he has taken Celexa off and on since his first surgery in 1999 for intermittent depression associated with his physical condition. (Exhibit 4F) There is no evidence of any significant treatment for depression and it appears the claimant's symptoms are controlled sufficiently by Celexa since he is able to maintain college coursework on a full-time basis.

(Tr. at 25.)

The court finds that plaintiff's part-time and necessarily sporadic attendance of college-level classes, with frequent "incompletes" due to interruptions caused by medical complications, does not provide a clear and convincing reason to reject plaintiff's subjective testimony about his symptoms and their severity. Thus, neither of the ALJ's stated reasons for rejecting plaintiff's testimony is clear and convincing. Once plaintiff's testimony is properly credited, the ALJ's finding that plaintiff's capacity for sedentary work is substantially intact cannot be affirmed because the finding is not supported by substantial evidence in the administrative record. Plaintiff's testimony and other evidence supports a conclusion that plaintiff is unable to sit for six hours in an eight-hour day.

> Sedentary work consists of lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). When a claimant is capable of only intermittent sitting and cannot engage in the full range of sedentary work, special consideration is required. Social Security

Ruling (SSR) 83-12 addresses the situation of claimants who are limited to intermittent sitting:

> In some disability claims, the medical facts lead to an assessment of [Residual Functional Capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.
>
> . . . . [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

SSR 83-12. See Aukland v. Massanari, 257 F.3d 1033, 1036 (9th Cir. 2001) ("[W]here a claimant is only qualified for unskilled jobs and is unable to sit for prolonged periods, the services of a vocational expert are required.").

        The ALJ's decision in this case concerning plaintiff's residual functional capacity is reversed with regard to the finding that plaintiff is able to sit for at least six hours in an eight-hour day and the finding that plaintiff's capacity for sedentary work is substantially intact. Due to the limitation on plaintiff's ability to sit for prolonged times, the ALJ's reliance on the grids at step five of the sequential evaluation process does not sustain the Commissioner's burden of proving plaintiff's non-disability, and that portion of the ALJ's decision is also reversed. The grids may be used only when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985)); see also Reddick, 157 F.3d at 729.

        On remand, the ALJ must consult a vocational expert to clarify the impact of plaintiff's limitations on the occupational base and to develop the record with regard to the availability of any other work plaintiff can perform. The vocational expert consultation and new

determination as to disability must take into consideration plaintiff's inability to sit for prolonged periods of time, as well as all limitations previously found by the ALJ: (1) plaintiff is severely impaired due to his status post L4-5 discectomy and L4-5 and L5-S1 foraminotomies in July 1999 and laminectomy in October 2001 with residual *cauda equina* syndrome and depression; (2) plaintiff can lift and carry no more than ten pounds; (3) plaintiff can stand and walk for no more than two hours in an eight-hour day and should avoid walking on uneven ground; (4) plaintiff can only occasionally climb, balance, kneel, crouch, stoop, or crawl; (5) plaintiff should avoid working around hazards; (6) plaintiff must be within 150 feet of a bathroom facility at all times; and (7) due to his mental impairments, plaintiff can perform only simple, unskilled work that does not involve much contact with the public.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner is reversed and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: March 22, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/patino1736.order